By the Chancellor.
At the last term of this court in 1840, this cause was brought to a hearing upon a writ of error to the supreme court, and was fully argued by some of the ablest counsel in the state : and after taking time for consideration the judgment of the court below, in favor of the defendants, was affirmed upon the merits, according to the settled practice of this court. That judgment of affirmance was also drawn up and settled in the usual form of entering the judgments of this court, and was directed to be remitted to the supreme court to be carried into effect, in the form prescribed by the statute on that subject, 2 R. S. 166. § 26. The attorney general now asks for a re-hearing of this case, to enable him if possible, to have the judgment of this court thus given, as well as the judgment of the supreme court reversed. One question presented for our consideration, therefore, is whether this court has the legal and constitutional right and power to open and reverse its own judgment, which has been deliberately given, upon a writ of error, after such judgment has been entered of record and ordered to be remitted to the court beldw, with all the forms prescribe d by the statute, to make it a final judgment of this court; especially in a case of this kind, which is in its nature a criminal proceeding, and may subject the defendants to criminal punishment, if the final decision shall be against them upon such re-hearing. Another question is whether it would be expedient for this court to exercise the power, even if it should be found upon examination that it could be exercised without violating the constitution, or the settled principles of the common law, and without usurping a right which belongs to the legislative power alone.
These questions I will now briefly consider, though I have not been able to examine them very fully, as I have been constantly engaged in my own court, during the ordinary hours of business, ever since the motion was made here on Tuesday last. Upon the question of expediency I have frequently Expressed my opinion in this court, when applications [ *254 ] of this kind have been made : without taking the trouble however, to inquire as to the legal power of the court to re-hear and "reverse its own final judgments upon the merits. I am satisfied that if we once make a precedent of this kind, it will in time lead to great abuse; and that parties who have had judgments given against them as this was, by a divided vote, or by small majorities, will upon a change of a part of the members of the court be induced to try experiments here, for the purpose of producing a different decision of their causes by the votes of new members. This, however, will not be the”worst effect of such an example. For if this court, on *194 a writ of error can open and reverse its decision upon the merits at a subsequent^term, inferior courts may do the same thing; as there is no statute, nor any principle of the common law, giving to this court any greater power in this respect than is possessed by other courts of record. And if we set the example, courts of common pleas, upon a change of their judges, will undoubtedly exercise the same power; so that if the old judges have given a judgment one way upon a certiorari to a justice’s court, the new judges may grant a rehearing and reverse that decision if they should differ in opinion with their predecessors. Upon this ground alone, therefore, I think the application should be denied.
I have, however, upon a full consideration of the case, come to the conclusion, that this court has no legal right to grant a rehearing upon a writ of error, after a final judgment has been pronounced here upon the merits of the case, and has been regularly settled and entered of record, in the form required by law. In courts of equity it has always been the practice to allow a re-hearingpipon the merits, even after a final decree in the cause, upon complying with certain forms; leaving the original decree, however, to stand until the result of such re-hearing was ascertained. But no such practico ever existed in courts of law ; at least no such practice has existed in this state. And I have examined the subject so far as to satisfy myself, that no re-hearing has been granted upon a writ of error in England, for several hundred years past. By referring to Lord Chief Justice Hale’s *- J ^jurisdiction of the house of lords, it will be seen, however, that in the cases of Alice Peres, Holt & Burgh, and of the Earl of Salisbury and others, in the time of Richard 2d, and of Henry 5th, the house of lords did exercise the right of reviewing its own decisions upon a writ of error, by permitting a party to bring a new writ of error at the same term, or at the next session, called a writ of petition of error. Hale’s Juris. H. L. 124. And upon appeals from the court of chancery, the house of lords exercised the power of granting re-hearings, in the usual form of granting re-hearings in chancery, down to the latter end of the 17th century. But since that time, I have not been able to find that a re-hearing was ever granted, even in an equity case, upon the merits. But in some few cases, mere defects in form have been corrected ; or a new clause has been added to the decree, to carry out the judgment of the house of lords upon the appeal. The cases referred to by Sidney on Appeals, and in Palmer’s Practice of the house of Lords, which have occured since the deliberate judgment of that tribunal upon the question of re-hearing in January, 1697, will all be found to be cases of that description. Both those writers considered it as the settled practice of that court, which has existed for nearly a century and *a half, that there can be no re-hearing or review of the cause upon the merits, after the minutes of the judgment have been settled and directed to be entered. *195 Sidney says, “ when the minutes of an order have been read at the table of the house of lords, it is considered as final and unalterable, even upon appeals from chancery.” Sydney 32. And in Bernal v. The Marquis of Donegal, in 1814, where a mistake in drawing up the order upon an appeal was corrected, Lord Redesdale, said the judgment of the house upon the merits could not be reversed, although from misapprehension of the cosnsel, in suppusing that the case would be disposed of upon a matter of form merely, the merits of the case had not been fully argued by such counsel at the hearing.
The same principles appear to prevail in the supreme court of the United States. In the case of Martin v. Hunter’s Lessee, 1 Wheat. Rep. 355, Mr. Justice Story, in ^delivering the opinion of the £ *256 ] court, said a final judgment in that court was conclusive upon the rights which it decided ; and that no statute had provided any process by which the court could revise its own judgments. He also said the point had been several times raised there’, and that it had been solemnly decided that a final judgment of that court was conclusive upon the rights of the parties, and could not be re-examined. See Hudson v. Guestier, 7 Cranch, 1.
In this court the case of Lansing v. Goelet was decided in October, 1827, when there was not a quorum present who were competent to vote in the decision of the cause. A petition for a re-hearing was filed during the same term by the appellant; and at the next session of the court he asked for a re-hearing on these grounds ; but the application was refused. Such has been the uniform practice here so long as I have been a member of this court, whenever an application has been made for a re-hearing after the final judgment of the court has been drawn up and settled : although as to mere clerical errors, and mistakes of form only, the order has been con. sidered amendable so long as the remittitur remained under the control of the court.
The fact that the judgment of affirmance in this case was entered upon an equal division of the members of this court, cannot alter the law in this respect, or authorize the court to reverse its own decision, any more than if the judgment of affirmance had been unanimous. The effect of such a judgment of affirmance is as conclusive upon the rights of the parties to the judgment as any other ; although it is not considered as settling the question of law in this court as to cases which may arise between other parties. This was solemnly decided by this court in the case of Bridge v. Johnson, 5 Wend. Rep. 342, referred to by the counsel on the argument, in conformity to the law as settled in the supreme court of the United States, and in the courts of error in England and Ireland. And the principle, that a judgment of affirmance, being founded upon an equal decision of the judges *196 merely, afforded no ground whatever for granting a re-hearing, [ *257 J was solemnly decided by this court in the cases *of Wadsworth v. Morris, and of Van Kleeck v. The Reformed Dutch Church, in February, 1839.
In the first of those cases, the judgment of the supreme court had been affirmed at the December term, in 1838, upon an equal division here, and contrary to what I supposed to be the law of that ease. And in the last, the decree of the court of chancery was affirmed in the same manner, and as to a part of the premises in dispute, contrary to the opinion of the chief justice. Motions for re-hearings were made in both causes on that ground; and while the remittiturs still remained under the control of this court. But the applications were denied. The court adopted the following order, which was intended to put the question at rest as to all future applications for the re-hearing of causes here, after there had been a final judgment or decree upon the merits, either upon an appeal or a writ of error: “ Ordered, that this court will not order a re-argument, nor will it re-consider any case, on the ground that it was decided on an equal division of the members of the court, or for any other reason, after the cause has been decided here upon the merits.” This decision, which was in accordance with the settled rule of law upon this subject, and which rule had been acquiesced in by all courts for more than one hundred and forty years at that time, I think we are bound to consider as decisive of the question. If so, it is impossible for us, without usurping powers not granted to us by the legislature, to change the law and reverse our own deliberate judgment in this case.
It is undoubtedly very important that the question as to the rights of the mayors and aldermen of our cities to exercise judicial powers should be put at rest; as it is now evident that doubts on the subject do exist, from the divided opinion of this court on that question. But the final settlement of this important point will not justify this court in legislating for the case in a manner which the senate and assembly themselves could not constitutionally do. And I am satisfied the legislature could not now pass a law, giving to this court the power to grant a re-hearing in the present-case, without interfering with the legal and constitutional rights of these defen- [ *258 ] dants ; for, by referring to the *forty-eighth section of the article of the Revised Statutes, relative to informations in the nature of a quo warranto, 2 R. S. 585, it will be found that the intrusion into a public office is made a criminal offence, for which the intruder, upon conviction on a proceeding by quo warranto, is liable to a fine of $2,000 in the discretion of the court; and though no unbiassed judge would think of imposing such a fine upon these defendants, under the circumstances of this case, that cannot alter the principle ; nor can it authorize this court or the legislature t¡o again expose the defendants to such a penalty after a final *197 judgment of the court of denier resort has been given in their favor and entered of record.
The case of the Sarlaem Bridge was not analogous to the present. For there, no judgment of the court had been entered, or even agreed upon by a majority of the members, when the re-argument was directed to enable the court to determine what judgment was proper to be given in the case; two of the senators having voted for a reversal under the erroneous impression that this court could grant a new trial. In that situation of the cause, there was no legal objection to a re-argument, although it may have been inexpedient, so far as the time of this court was concerned. Sydney, in speaking of the practice of the court of dernier resort in England, in settling its final judgments, says it is the practice of that court, in all cases of difficulty and importance, to deliver to the agents of the parties copies of the proposed minutes of the judgment, that they may make such objections and suggest such alterations as may occur to them ; and in that state of the proceedings, new points may be argued or old points re-argued if the house thinks it expedient. Therefore, it is only when the judgment of the court has been settled that it becomes final and conclusive upon the rights of the parties. Here, the judgment of this court was settled at the December term, and was final. Nothing now remains to be done, but for the attorney for the defendants to apply to the clerk and get the copy of the record of" that judgment and file it in the supreme court; which he has a right to do at any time, without any further action of this court upon the subject.
*For these reasons, I think we have no right to disturb that [ *259 ] ■ judgment, or to put these defendants again in jeopardy by revers- '■ ing our own decision ; and, therefore, that the motion for a re-hearing should be denied.
On the question being put, Shall the motion he granted? the members of the court divided as follows:
In the affirmative: Senators Dickinson, Dixon, Furman, Hawkins, Hull, Hunt, Root, and Works—8.
In the negative: The Chancellor and Senators Denniston, Ely, Fos- ‘ ter, Humphrey, Hunt, Lee, Livingston, Maynard, Moseley, Nicholas, Paige, Platt, Scott, Skinner, Strong, Taylor and Verplanck—18.
Whereupon, the motion for a re-hearing was Denied.