450 P.2d 383

STATE of Arizona ex rel. the Attorney General, Gary K. NELSON, Petitioner,

v.

Jewel W. JORDAN, Respondent.

No. 9480.

Supreme Court of Arizona.

In Banc.

Feb. 6, 1969.

Gary K. Nelson, Atty. Gen., Phoenix, for petitioner.

R. G. Langmade, Phoenix, for respondent.

STRUCKMEYER, Justice.

This original proceeding in quo warranto was brought by the State of Arizona, out of the relationship of Gary K. Nelson, the Attorney General, to test the right of Jewel W. Jordan to hold the office of State Auditor. On December 31, 1968, this court entered judgment that respondent legally held an existing office, that of State Auditor. On January 9, 1969, petitioner filed a motion for rehearing asking for a reconsideration of the State's position on the merits. Rehearing granted and Judgment of December 31, 1968, vacated.

Respondent objects to petitioner's motion for rehearing urging that there is no procedure for reconsideration of a decision where this court exercises its original jurisdiction pursuant to Art. 6, § 5, ¶1, Constitution of Arizona, A.R.S. It is true that Rule 1 of the Rules of the Supreme Court, 17 A.R.S. only sets forth the procedure for filing and hearing applications invoking our original jurisdiction. It does not set forth a procedure for a rehearing, but, we note, neither does the rule expressly prohibit a rehearing.

We are reluctant on principle to subscribe to the notion that the court does not have the right or power to reconsider decisions found to be manifestly in error. Such was our view in Lindus v. Northern Insurance Company of New York, 103 Ariz. 160, 438 P.2d 311. There, on a motion for rehearing of a denial of a motion for review we recalled the mandate and accepted review, although there was no rule providing for reconsideration. We said:

"It would be absurd to argue that a court, empowered to correct errors in every other court in this state cannot correct its own. Ariz.Const. Art. 6, Sec. 5, A.R.S. To hold otherwise would create the astounding concept that mistakes made by the Supreme Court of Arizona are the only errors for which no relief is available." 103 Ariz. at 162, 438 P.2d at 313.

There is precedent for this application for rehearing. In the past on an original application for prohibition under the same Article and Section, Art. 6, § 5, we granted a motion for rehearing as a matter of course and without discussion. State v. Superior Court of Maricopa County, 93 Ariz. 149, 379 P.2d 133, on Rehearing 93 Ariz. 351, 380 P.2d 1009. In Lane v. Mathews, 75 Ariz. 1, 251 P.2d 303, although there was no rule providing therefore, this court granted a second rehearing stating that it was under the inherent power of the court to correct its judgments. And see Arizona Com. Min. Co. v. Iron Cap C. Co., 29 Ariz. 23, 239 P. 290. We note also that

in Utah, a State with a constitutional provision similar to Arizona's Art. 6, § 5, its Supreme Court accepted rehearing on an original application in quo warranto. State ex rel. Stain v. Christensen, 84 Utah 185, 35 P.2d 775, 812, and see Art. 8, § 4, Constitution of Utah, Revised Statutes of Utah.

■ Prior to the General Election of November 5, 1968, the office of State Auditor was a constitutional office. Art. 5, § 1 in so far as pertinent provided:

"The Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for two years beginning on the first Monday of January next after his election."

At the same election there was referred to the people by the legislature of Arizona Proposition No. 108, a proposed constitutional amendment, to abolish the office of State Auditor. It reads in its pertinent part:

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for two years beginning on the first Monday of January next after his election."

The legislature also referred to the people Proposition No. 104 seeking to amend the existing Art. 5, § 1 by changing the terms of office for the Executive Department from two to four years. This included the office of State Auditor since it was at the time of referral an existing office. Proposition No. 104 reads in its pertinent part:

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for four years beginning on the first Monday of January, 1971 next after the regular general election in 1970."

Proposition No. 104 received 266,035 affirmative and 129,991 negative votes and Proposition No. 108 received 206,432 affirmative and 171,474 negative votes. Both were proclaimed as adopted by the Governor on December 4, 1968.

Respondent, Jewel W. Jordan, has held the office of State Auditor for many years and was re-elected at the General Election on November 5, 1968. It is her position that Proposition No. 104 is in conflict with Proposition No. 108 because Proposition No. 104 in specifically enumerating the offices of the Executive Department of the State *included* the office of State Auditor. By the Constitution, Art. 4, part 1, § 1(12), where two or more amendments to the Constitution adopted at the same election are in conflict, the one receiving the greater number of affirmative votes shall prevail. Proposition No. 104 received the greater number of affirmative votes.

In the decision of this court on December 31, 1968, the dissenting judges pointed out that "while Art. V § 1 consists of one sentence, structurally it has two distinct clauses, hence it is divisible into two severable parts," one enumerating the offices of the Executive Department and the other providing for their terms. The dissenting judges were of the opinion that the plain legislative purpose in referring two propositions to the people was to amend each clause separately, thereby permitting the electorate to decide separately whether the terms of office of the Executive Department should be increased to four years, and whether the office of State Auditor should be abolished. It was necessary that the propositions conform to Art. 21, § 1, Constitution of Arizona and the holding of this court in Kerby v. Luhrs, 44 Ariz. 208 at p. 221, 36 P.2d 549 at p. 554, 94 A.L.R. 1502:

"* * * if any one of the propositions, * * * is not such that the voters supporting it would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, * * *."

This conclusion as to the purpose in submitting two propositions is made clear in the title to the Senate Concurrent Resolution No. 6 [Proposition No. 104] reading:

"A CONCURRENT RESOLUTION

"PROPOSING AN AMENDMENT OF THE CONSTITUTION OF ARIZONA RELATING TO THE EXECUTIVE DEPARTMENT; PROVIDING FOR FOUR YEAR TERMS FOR THE GOVERNOR, SECRETARY OF STATE, STATE AUDITOR, STATE TREASURER, ATTORNEY GENERAL AND SUPERINTENDENT OF PUBLIC INSTRUCTION, AND AMENDING ARTICLE 5, SECTION 1, CONSTITUTION OF ARIZONA."

and the title to the House Concurrent Resolution No. 1 [Proposition No. 108]:

"A CONCURRENT RESOLUTION

"PROPOSING AN AMENDMENT OF THE CONSTITUTION OF ARIZONA ABOLISHING THE OFFICE OF STATE AUDITOR, AND AMENDING SECTIONS 1, 6 AND 9 OF ARTICLE 5, CONSTITUTION OF ARIZONA."

Since Proposition No. 108 was passed by the legislature some nine days prior to Proposition No. 104, it could not logically have been the legislative purpose in referring Proposition No. 104 to the people to continue the office of State Auditor as an office of the Executive Department if a majority of the voters were in favor of Proposition No. 108 abolishing the office.

■ We do not thing it necessary to extend this decision by repeating the reasons and authorities expressed and cited in the dissent. We have re-examined the views there set forth and are satisfied that they are correct. This decision is rested on the principle that the dominant canon of constitutional interpretation is to arrive at the purpose of the constitutional enactment; that in arriving at the purpose where, as here, separate parts of a constitution are seemingly in conflict, it·is the duty of the court to harmonize both so that the constitution is a consistent workable whole.

The two propositions are in conflict only if the language of Proposition No. 104 is literally applied in a vacuum without searching for the end sought to be attained. By the construction here placed upon the two amendments they can be made to stand together, and Proposition No. 108 is not stricken down as nugatory so that its submission to the people at the General Election in November was not a pointless act.

■ Counsel for the litigants have searched meticulously for authority and precedent both from this and other jurisdictions. We have examined those cited and others and while they are enlightening, we find none which deal with the same facts and circumstances found here. But even if it were possible to say that another jurisdiction had passed on the same problem contrary to our conclusions presented in this case, we would adhere to the views expressed, confident that constitutional principles properly applied support the result reached. In this a democratic society, we are irretrievably wedded to the principle that, subject to constitutional limitations, the will of the majority as expressed in free elections must prevail.

Since the people have abolished the State Auditor's office, we hold that Art. 5, § 1 has been amended by the adoption of Proposition No. 108 and No. 104 to read:

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for four years beginning on the first Monday of January, 1971 next after the regular general election in 1970."

■ One further matter must be considered. Constitutional amendments referred to the people become law on the day the Governor proclaims them. Constitution of Arizona, Art. 4, part 1, § 1(13). On December 4, 1968, the Governor proclaimed Propositions No. 104 and No. 108 adopt-

ed. On proclamation of Proposition No. 108 as adopted, the office of State Auditor was abolished.

The legislature provided by Chapter 89, Laws of 1968, for a Commissioner of Finance to assume the duties of the State Auditor. By § 100 thereof it further provided:

"This act shall not become effective until January 2, 1969 and not until the Constitution of Arizona is amended by vote of the people abolishing the office of state auditor."

■ The language used by the court in Lively v. Board of Education, 115 W.Va. 314, 175 S.E. 784, is applicable to the present situation:

"It is quite generally recognized that when a public office is abolished by a duly constituted authority, the incumbent thereof ceased to be an officer, unless it is necessary to hold the persons assuming to act to be de facto officers to prevent great public injury."

■ We have said that a de facto officer is one whose acts though not those of a lawful officer are held valid so far as they involve the interests of the public and third persons. Rogers v. Frohmiller, 59 Ariz. 513, 130 P.2d 271. Hence, in order to avoid great public inconvenience, we further hold that Jewel W. Jordan presently occupies the office of State Auditor as a defacto officer and is entitled to discharge the duties of the office and to the emoluments thereof until succeeded in the manner provided by law.

It is the order of the court that a judgment of ouster will issue to respondent, Jewel W. Jordan, immediately upon a showing to this court that a Commissioner of Finance has been appointed and has qualified pursuant to the applicable provisions of Chapter 89, Laws of 1968.

UDALL, C. J., and HAYS, J., concur.

McFARLAND, Justice, and LOCKWOOD, Vice Chief Justice (dissenting).

On December 31, 1968, a majority of this Court, as it was then constituted,[1] entered a final judgment in this original proceeding in quo warranto that "Proposition 108 has not been adopted, and did not become a part of the Constitution of Arizona," and that the respondent "now legally holds office as State Auditor, and, a certificate of election having been issued to her by the Secretary of State certifying her election as State Auditor on November 5, 1968, is entitled to continue to hold such office for a two-year term, commencing the first Monday in January, 1969." On the strength of this judgment, the respondent took her oath of office on January 6, 1969.

We re-emphasize the principles set forth in our former opinion, State ex rel. Nelson v. Jordan, 104 Ariz. 90, 449 P.2d 18, and our judgment based thereon. There is little cause to repeat the reasoning of that judgment.

There is nothing new presented either in the Attorney General's motion or the present majority's opinion. The same arguments were made by the Attorney General in his original motion and brief as are contained in his motion for rehearing, and the same issues are contained in the previous minority opinion as those now in the present majority opinion.

The question presented was whether there was conflict in Propositions 104 and 108. As previously pointed out, Proposition 104 vests the Executive Department in the Governor, Secretary of State, State Auditor, State Treasurer, Attorney General and Superintendent of Public Instruction, to hold office for four years; and Proposition 108 vests the Executive Department in the Governor, Secretary of State, State Treasurer, Attorney General and Superin-

---

1. The present minority was joined by then Mr. Justice Bernstein in the majority opinion filed on Dec. 31, 1968. Since then, but prior to the filing of the petition for rehearing, Mr. Justice Bernstein has been replaced on this Court by Mr. Justice Hays who joins with the former minority in the present judgment.

tendent of Public Instruction, each to hold office for two years. As we said before, they are in irreconcilable conflict. Furthermore, they were very confusing to the voters in that many may have voted for Proposition 108—not to abolish the office of Auditor, but because they favored a two-year term of office. Were both propositions, as they appeared on the ballot, to be placed in the Constitution in haec verba the conflict would be apparent and they would, of course, be impossible of construction or interpretation. Where this test shows such a conflict, then there should be no doubt but that under our Constitution the one receiving the lesser number of votes does not become a part of the Constitution. All of this is more fully set forth in the judgment of the original majority and is supported by precedents from other states.

The new majority says:

- "In this, a democratic society, we are irretrievably wedded to the principle that, *subject to constitutional limitations*, the will of the *majority* as expressed in free elections must prevail." (Emphasis added.)

It was precisely this principle that formed the foundation of the prior judgment. We there resolved the obvious conflict in the proposed amendments—which conflict the majority still acknowledge—by sustaining Proposition 104 which received the greater number of votes of the public. That decision was dictated by Article IV, part 1, section 1, paragraph 12 of the Constitution of Arizona.[2]

We are of the opinion the present majority indulge in, what we referred to as, "judicial legislation" by "picking and choosing" certain clauses from each of the propositions to form a composite amendment to the Constitution. Under the cir-

cumstances we feel that any lingering doubts as to the intent of the electorate should have been laid to rest—not by this Court straining to construe the conflicting proposals, but by resubmitting the question, in clear form, to the people.

While we feel we should briefly point out the defects in the present majority's opinion on the merits, there is a new and most serious question presented in this case, which we view with grave concern; namely, the procedure used to upset the former majority opinion.

The majority cite as precedent for granting the rehearing State v. Superior Court of Maricopa County, 93 Ariz. 149, 379 P.2d 133, rehearing 93 Ariz. 351, 380 P.2d 1009; Lane v. Matthews, 75 Ariz. 1, 251 P.2d 303; and Arizona Com. Min. Co. v. Iron Cap C. Co., 29 Ariz. 23, 239 P. 290. In the former case, the question presented here was neither raised nor considered by this Court, while the latter two involved an appeal—not this Court's original jurisdiction. However, the respondent in the instant case vigorously opposed the Attorney General's motion for rehearing on the grounds that no procedure is provided for reconsidering a judgment in quo warranto, rendered under this Court's original jurisdiction. As was pointed out by the respondent, Rule 9 of the Arizona Supreme Court Rules, 17 A.R.S., read in conjunction with Rule 8 is applicable only to rehearings on an appeal. Rule 1, which covers quo warranto heard under this Court's original jurisdiction, makes no provision for reconsideration of a final judgment. With this we agree.

Not only do we of the present minority agree but the Attorney General previously agreed with this in State ex rel. Smith v. Bohannan, 101 Ariz. 520, 421 P.2d 877,

2. "(12) [Conflicting measures or constitutional amendments] If two or more conflicting measures or amendments to the Constitution shall be approved by the people at the same election, the meas-

ure or amendment receiving the greatest number of affirmative votes shall prevail in all particulars as to which there is conflict."

wherein, in opposition to a petition for rehearing, he said in his response:

## "THE MOTION FOR REHEARING IS NOT PROPER

"The provisions relative to rehearing matters decided by this Court are contained in the sections relating to civil appeals and criminal appeals. There is no provision under Rules 1 and 2 governing writs, providing a rehearing before this Court when a writ has been issued. It is elementary that a motion for rehearing is not a substantial part of any matter before this Court. It is purely a statutory grant, and there is no constitutional or logical mandate requiring that rehearings be allowed. This Court has heretofore indicated that the decision of December 21, 1966, was the writ of the Court and that no further mandate was necessary. Since the mandate or decision of the Court has been rendered, it would appear that a motion for rehearing now could accomplish nothing. See for example, the provisions under Rule 14 relating to the issuance of mandates in appeals. It is, therefore, our belief that this Court should summarily dismiss the petition for rehearing on the grounds that it does not lie within the provisions of the rules of this Court.

\* \* \* \* \* \*

"It is, therefore, respectfully submitted that the motion for rehearing should be dismissed or in the alternative be denied." State ex rel. Smith v. Bohannan, No. 8841.

And this Court obliged him. There has been no change in our Rules since the Bohannan case. The only change is that in Bohannan the Attorney General was opposing a rehearing while here he now is seeking it, which is a poor reason for this Court to reverse its former stand.

We acknowledge that this Court has inherent power to change, alter or modify its own judgment, while such judgment is under its control, but such power must be exercised within a properly promulgated statute or rule. Overson v. Martin, 90 Ariz. 151, 367 P.2d 203; Wolfe v. Hammer, 202 Tenn. 170, 303 S.W.2d 716; Atlantic Coast Line R. Co. v. City of Lakeland, 94 Fla. 347, 115 So. 669, 679; People v. Mayor, etc., of City of New York, 25 Wend. 251; 5 C.J.S. Appeal and Error § 1409, p. 538.

In Lane v. Matthews, supra, cited by the majority, the court, in discussing its inherent powers over its own judgments, referred to 3 Am.Jur., App. & Err., § 796, page 345, as one of its authorities. But that section further states that the power of a court to grant a rehearing must be exercised "before a decree has been carried into execution." The original judgment filed in this case on December 31, 1968, was also the mandate of this Court. A judgment in quo warranto, by its very nature, is self-executing and by its own force accomplishes its object without any further action by the court. State ex rel. Guthrie v. Chapman, 187 Wash. 327, 60 P.2d 245, 106 A.L.R. 640; State ex rel. Jones v. Wise, 9 W.W.Harr. 409, 39 Del. 409, 200 A. 418; 74 C.J.S. Quo Warranto § 50, p. 276. On January 6, 1969, when the respondent took her oath of office and entered upon her duties, the judgment was fully executed and this Court retained no further jurisdiction. This is exactly what the Attorney General argued in State ex rel. Smith v. Bohannan, supra. It apparently was good law then and in our opinion it is still good law, until and unless there is a statute or rule granting a rehearing in such cases and suspending the effect of the judgment during this time.

The majority acknowledge that Rule 1 does not set forth a procedure for rehearing but note that "neither does the rule expressly prohibit a rehearing." Such a philosophy is hardly in keeping with the "rule-making" power of this Court and we are sure that this Court would be among the first to chastise a lower court which indulged itself in any such permissive interpretation of the Rules. Further, such a philosophy runs counter to this Court's

own attitude that even the right of appeal exists only by force of the Constitution and statutes, State v. Moore, 48 Ariz. 16, 58 P.2d 752; State ex rel. Murphy v. Superior Court of Arizona in and for Pinal County, 25 Ariz. 226, 234, 215 P. 538, and in the absence of such statutes this Court has no jurisdiction to hear the matter. State v. Phelps, 67 Ariz. 215, 193 P.2d 921. This Court has further stated, in discussing Rule 9, supra, that "It is the general rule that, in the absence of statute, an appellate court has no power to reconsider, alter or modify its decision." Overson v. Martin, supra. We are at a loss to understand how this Court can deny jurisdiction in such cases where no explicit statute confers the same, but in this case can assume jurisdiction because no rule prevents it.

We feel that the law set forth above should have been sufficient to result in summary dismissal of the petition. But since the majority nonetheless granted it, some comment is in order on the lack of grounds, for rehearing, presented by the Attorney General. He commences his petition, "It seems clear to the petitioner that the decision of this Court, as now written, finds conflict where no conflict exists or was intended to exist * * *" and continues in a restatement of the arguments presented prior to the original judgment, and a discussion of how the original majority misconstrued the cases cited therein. It is a mere rehash of old arguments. That such arguments do not constitute grounds for setting aside the judgment is a well-established principle of general application by appellate courts throughout the United States. See 5 C.J.S. Appeal and Error § 1411, p. 540, note 67.

"Certainly it is not the function of a petition for rehearing to furnish a medium through which counsel may advise the court that they disagree with its conclusion, to reargue matters already discussed in briefs and oral argument and necessarily considered by the court, or to request the court to change its mind as to a matter which has already received the careful attention of the judges, or to further delay the termination of litigation." State ex rel. Jaytex Realty Co. v. Green, Fla.App., 105 So. 2d 817.

A case peculiarly apt to the situation here is Woodbury v. Dorman, 15 Minn. 341 (15 Gil. 274), where the majority of a newly constituted court, although in obvious disagreement with a decision of the former majority, refused to grant a rehearing. The court said:

"Taking the points presented upon the reargument, which was permitted under protest, as the grounds upon which it is claimed that the case should be reexamined, we are compelled to say that there is nothing in them, which we conceive to be substantial or important, which was not urged and considered upon the original argument and examination of the case. The rule governing applications for reargument, above referred to, has, so far as our information extends, been generally acquiesced in and observed in this court. We think it a wholesome rule, and perceive no sufficient reason for excepting this case from its operation. See, also, Brown v. Aspden, 14 How. [25] 26 [14 L.Ed. 311]; 1 Black, 488; Mount v. Mitchell, 32 N.Y. 702; Kent v. Waters, 18 Md. 53, 73; Johns v. Johns, 20 Md. [58] 59.

"The majority of this court, as it was constituted at the time of the original hearing and decision of this case, after much discussion and deliberation, came to conclusions (myself dissenting) which led to the affirmance of the judgment. Since the decision was filed, the author of the majority opinion has been succeeded by the present chief justice. Were the court now constituted as it was when the decision was rendered, there is not the slightest reason to suppose that the decision would be changed. So that if a reargument were now allowed, and the former decision reversed, this result would follow, not from a conviction upon the part of the members of the court by which the case was

originally heard and determined that the decision was erroneous, nor from the consideration of reasons and arguments not before advanced and considered, but solely from the change in the composition of the court.

"Under such circumstances, a relaxation of the ordinary rules governing applications for reargument would seem to be peculiarly ill-timed.

"It would, in our opinion, be a violation of proprieties in the administration of justice which it is the duty of a court to maintain, and would tend to destroy that respect for and confidence in judicial tribunals, the loss of which every good citizen would deplore. See remarks of Chancellor Walworth in People v. Mayor, etc., of N.Y., 25 Wend. 254. The application for the reargument must therefore be denied." Woodbury v. Dorman, supra.

Many cases have supported Woodbury v. Dorman in holding a change in membership of the court is not grounds for granting a rehearing. See, e. g., Rohlfing v. Moses Akiona, Ltd., 45 Haw. 440, 369 P.2d 114; Peoples v. Evening News Ass'n, 51 Mich. 11, 16 N.W. 691; Flaska v. State, 51 N.M. 13, 177 P.2d 174, 186; Cordner v. Cordner, 91 Utah 474, 64 P.2d 828. In Gas Products Co. v. Rankin, 63 Mont. 372, 207 P. 993, 24 A.L.R. 294, the Montana Supreme Court cited and re-emphasized the value of the Woodbury rule; and the North Dakota Supreme Court similarly denied a petition for rehearing in Golden Valley County v. Greengard's Estate, 69 N.D. 171, 284 N.W. 423. In both the Gas Products and Golden Valley cases, the dissenting justices in the original opinions concurred with the denial of the rehearing.

This attitude towards rehearings is a "long-established rule" of this Court. Climate Control, Inc. v. Hill, 87 Ariz. 201, 349 P.2d 771, app. dismissed 364 U.S. 409, 81 S.Ct. 180, 5 L.Ed.2d 185; Phelps Dodge Corp. v. Industrial Comm., 90 Ariz. 379, 368 P.2d 450; Cerro Cobre Development Co. v. Duvall, 18 Ariz. 334, 160 P. 25; Territory v. Delinquent Tax List, 3 Ariz.

69, 89, 21 P. 888. Its applicability to the instant case can be best expressed by quoting from the earliest Arizona case on this subject:

"This was an action of ejectment to recover possession of mining ground. The cause was tried below by the court and a jury, and a verdict was rendered for plaintiff, and judgment accordingly. The defendant moved for a new trial, which was overruled, and he appealed to this court. The cause was submitted to the January term, A.D. 1885, of this court, and the judgment was affirmed. [Arizona Prince Copper Company v. Copper Queen Mining Company, 2 Ariz. 10, 7 P. 718.] Defendant petitioned this court for a rehearing of the cause, which was granted, and the case was reargued, and again submitted. Neither the petition itself, nor the argument of the case, point out any misapprehension of the record by this court, or any mistake in the law of the case. Every question urged upon us was submitted and considered by the court on the former hearing. We are, in effect, asked to review that decision of this court. This we decline to do. It is not the office or purpose of a rehearing to reopen the whole cause, and to require of the court a reconsideration of the whole case. Were this precedent to be established, it would open the doors for petitions for rehearing of all causes, and we should expect them more particularly when the persons who compose the court have been changed." Copper Queen Mining Co. v. Arizona Prince Copper Co., 2 Ariz. 169, 11 P. 396, app. dismissed 127 U.S. 782, 32 L.Ed. 331.

It is no longer a question whether or not the majority of this Court agree or disagree with the original judgment in this cause but that in the course of reversing it the present majority has resorted to an unauthorized procedure and has, additionally, set aside a long-established rule of this Court. It would seem that this Court can no longer, in good conscience, deny petitions for rehearing in any case coming be-

fore us, no matter how repetitious they may be.

Of equal import is the entire manner by which the respondent was divested of her right to hold the office of State Auditor. As we previously pointed out, the respondent was legally elected to her office of State Auditor and a certificate of election was issued to her before the Governor's proclamation of passage of Proposition 108; the judgment of this Court was made on December 31, 1968, which held Proposition 108 was not adopted as a constitutional amendment and respondent was legally entitled to hold the office of State Auditor for the two years for which she was elected; respondent took her oath of office and entered into the duties of State Auditor on January 6, 1969, and from that date to this she has performed the constitutional duties of State Auditor. Now, without a procedure being provided for setting aside this judgment, she is by the present majority of this Court being deprived of this office. To oust the respondent from office in this manner would be against the natural and inherent principles of justice which are implicit in due process.

We must, therefore, dissent.