590 P.2d 1359

Ken R. KUNES, Assessor, County of Maricopa, State of Arizona, Glenn O. Stapley, Treasurer, County of Maricopa, State of Arizona, County of Maricopa, Richard F. Hillman, Assessor, County of Coconino, Rose Stacy, Treasurer, County of Coconino, County of Coconino, and Arizona Department of Revenue, Appellants,

v.

SAMARITAN HEALTH SERVICE, an Arizona Non-Profit Corporation, Valley National Bank, an Arizona Corporation, Flagstaff Community Hospital, an Arizona Non-Profit Corporation, Litton Industries Credit Corporation, Ziegler Leasing Corporation, General Leasing Co., and Transunion Medical Leasing Co., Appellees.

No. 13580.

Supreme Court of Arizona, In Banc.

Jan. 23, 1979.

Rehearing Denied Feb. 27, 1979.

Bruce E. Babbitt, John A. LaSota, Jr., former Attys. Gen., Robert K. Corbin, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Beer, Kalyna & Simon by Olgerd W. Kalyna and Donald P. Roelke, Phoenix, for appellants.

Lewis & Roca by Roger W. Kaufman, Jay S. Ruffner and Paul G. Ulrich, Phoenix, for appellees.

HOLOHAN, Justice.

This case presents the question whether equipment owned by profit-making corporations and leased to charitable organizations is exempt from *ad valorem* property tax. Two cases, one from Maricopa County and the other from Coconino County, have been consolidated for purposes of this appeal.

Appellee Samaritan Health Service is a nonprofit charitable corporation which operates several nonprofit hospitals in Arizona. It finances the purchase of much of its equipment through the Valley National Bank. The agreement between the bank and Samaritan calls for the bank to purchase equipment according to the hospitals' order, which equipment the bank then leases to the hospitals. The bank retains title to the property at all times, but delivery of the equipment is made directly to the appropriate hospital, and the hospital retains sole possession of the equipment for the duration of the lease. Flagstaff Community Hospital finances its equipment by similar agreements with a number of profit-making corporations operated for the specific purpose of leasing such equipment to institutional users. The lease agreements in both cases require any *ad valorem* property taxes to be paid by the appellee hospitals. Consequently any tax exemption would be a financial benefit to the hospitals.

The county assessors for Maricopa and Coconino Counties included this equipment on the *ad valorem* property tax rolls in 1975. The financing institutions and hospitals joined in applying for tax exemptions based upon A.R.S. § 42–271(4), which exempts "hospitals . . . and the lands appurtenant to such buildings, with their fixtures and equipment, not used or held for profit." Both county assessors denied the tax exemptions, stating that the property was owned by profit-making organizations which are not entitled to the exemption. Appellees then paid the taxes under protest and brought an action to recover these payments. The cases were consolidated in Maricopa County Superior Court. That court granted summary judgment in favor of appellees. The tax authorities appeal. We have jurisdiction pursuant to 17A A.R.S. Rules of Civil Appellate Procedure, rule 19(e). For the reasons which follow we reverse the decision of the Superior Court.

There are no disputes as to the material facts in this case. Only one issue is presented for us to resolve: Is personal property owned by profit-making organizations but leased to and used exclusively by nonprofit hospitals for charitable purposes exempt from *ad valorem* property taxation?

A.R.S.Const. art 9 § 2 reads in pertinent part:

"Property of educational, charitable and religious associations or institutions not used or held for profit may be exempt from taxation by law."

Pursuant to this constitutional authorization the legislature has enacted A.R.S. § 42–271(4), which exempts "hospitals . . and the lands appurtenant to such buildings, with their fixtures and equipment, not used or held for profit."

The constitution reads further:

"All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law."

In considering the issue before us, we must keep in mind a statement made earlier by this court:

"The constitutional provision does not of itself exempt any property from taxation. It merely permits the legislature to exempt such of the property of 'charitable . . . associations or institutions' as is not used or held for profit. And under this the legislature cannot grant more, but may give much less than the exemption permitted by the constitution." *Conrad v. County of Maricopa,* 40 Ariz. 390, 393, 12 P.2d 613, 614 (1932).

The rule of law is clear that the legislature cannot exempt from *ad valorem* taxation any property or class of property not specified in the constitution. *Miners and Merchants Bank v. Board of Supervisors of Cochise County,* 55 Ariz. 357, 101 P.2d 461 (1940). We must therefore interpret the meaning of A.R.S. § 42–271(4) in such a way that it conforms to the limitations of A.R.S.Const. art. 9 § 2. Thus, the issue becomes whether the constitution's words "property of . . . charitable . . . institutions" includes property leased to hospitals by nonexempt organizations. We hold that it does not.

In Arizona, laws exempting property from taxation are to be strictly construed and interpreted in light of the presumption that tax exemptions are not favored. *Lois Grunow Memorial Clinic v. Oglesby,* 42 Ariz. 98, 22 P.2d 1076 (1933).

In *State of Arizona v. Yuma Irrigation District,* 55 Ariz. 178, 99 P.2d 704 (1940), an irrigation district attempted to claim exemption from property tax based upon A.R.S.Const. art. 9 § 2. The legislature had passed laws establishing irrigation districts as "municipal corporations," and these statutes, if valid, would have allowed the irrigation district in question a tax exemption equivalent to that enjoyed by any municipality. However, this court held that the constitutional provision did not extend to corporations established for business rather than political purposes.[1] Finding that the legislature had exceeded its constitutional authority in attempting to give a tax ex-

emption to irrigation districts, the court stated:

> "The legislature can exempt only that property the constitution provides it may exempt by law. It cannot do indirectly what it cannot do directly." 55 Ariz. at 184, 99 P.2d at 706.

The same reasoning applies to the case before us. The constitution mandates that only "property of" appellee hospitals can be given tax-exempt status. The legislature cannot expand its constitutional authority by merely redefining the term "property of" to include leased property.

The Supreme Court of Utah faced the very question before us in *University of Utah v. Salt Lake County,* 547 P.2d 207 (Utah, 1976). Holding that the phrase *"property of* the institutions" does not encompass property leased to the tax-exempt institutions by profit-making organizations, the Utah Supreme Court denied the University of Utah a tax exemption on equipment leased from Picker X-ray Company. That court held, as we do here, that the phrase "property of" requires that a property tax be imposed upon and exemptions granted to the title owner of property, not the user. In following Utah's decision, we conform to what appears to be the uniform rule of law. *See Hoover Equipment Company v. Board of Tax Roll Corrections of Adair County,* 436 P.2d 645 (Okla., 1967); *People v. St. Mary's Roman Catholic Hospital,* 306 Ill. 174, 137 N.E. 875 (1922); *Annot.* 55 A.L. R.3d 430 § 9 (1974).

Prior Arizona case law also appears to mandate such an interpretation. In *Maricopa County v. Fox Riverside Theatre Corp.,* 60 Ariz. 260, 135 P.2d 513 (1943), this court interpreted the application of A.R.S. Const. art. 9 § 2 to a leasehold. In that case the parties were reversed. The City of Phoenix leased a parcel of real property to a profit-making corporation. The lessee made improvements on the property which were declared by the lease agreement to be

---

1. In response to the decision in *Yuma Irrigation District,* the state constitution was amended to give irrigation districts the status of political

subdivisions of the state. *See* art. 13 § 7 Ariz. Const.

the property of the lessor. All parties agreed that, to the extent that it was the property of the City of Phoenix, the real estate was exempt from taxation under the constitutional provision exempting municipal property. The tax assessor argued that the leasehold held by the profit-making corporation was a separate, identifiable property interest which was subject to taxation. This court agreed that the leasehold was an independently recognizable property interest. However, because the legislature had not specifically provided for taxation of the leasehold apart from the underlying fee title, no tax could be imposed upon the private corporation. In coming to this decision, the court was predisposed toward a finding that the *use* of the property rather than legal title should be the determinative factor.[2] Nevertheless, the court could not overcome the clear meaning of the constitutional provision exempting "municipal property." We reach the same conclusion as to the meaning of "property of . . . charitable . . . institutions." The phrase clearly and unambiguously means property *owned by* such institutions.

In *State Tax Commission v. Shattuck*, 44 Ariz. 379, 38 P.2d 631 (1934), this court considered a number of constitutional attacks upon the Intangible Property Tax Act of 1933. Laws 1933, 1st Spec.Sess. ch. 16. One portion of the statute attempted to exempt from taxation intangible property of individuals "owned, held *or* used exclusively for charitable purposes." That provision was stricken because it conflicted with A.R.S.Const. art. 9 § 2. This court held that it was beyond the legislature's power to give such an exemption to property belonging to individuals even though the property would be used for charity. That decision was, in effect, a recognition of the fact that our constitution has an ownership requirement which must be met before charitable property can be exempt from taxation.

Both parties to this action point out that there are three basic types of exemption schemes found among the various state laws. *See Annot.* 55 A.L.R.3d 430 § 1[c] (1974). Some states base exemption solely on ownership of the property. Others base exemption solely on use of the property. A third group combine ownership and use. Arizona's constitutional provision is of the third type. The fact that the constitution excludes from the exempt category any property of charitable organizations "used or held for profit" creates a use requirement in addition to the ownership requirement discussed above. *See Kunes v. Mesa Stake of Church of Jesus Christ of Latter-Day Saints*, 17 Ariz.App. 451, 498 P.2d 525 (1972); *Memorial Hospital v. Sparks*, 9 Ariz. App. 478, 453 P.2d 989 (1969). The application of this "use" requirement in the present case does not relate to the financing institution's use of the property to generate income. Rather, it refers to the charitable institution's use of the property. For example, should a hospital own a computer which it uses for hospital administration, both the ownership and use requirements of the constitution would be met and the property would be exempt from taxation. If the hospital were to sell computer time to another business and use the revenue generated by this arrangement for its charitable purposes, the computer would be "used for profit" and therefore lose its exempt status. *See Verde Valley School v. County of Yavapai*, 90 Ariz. 180, 367 P.2d 223 (1961); *Kunes v. Mesa Stake of Church of Jesus Christ of Latter-Day Saints, supra; Memorial Hospital v. Sparks, supra.* Where, as in this case, the ownership requirement has not been met, the use of the property becomes unimportant.

Among the facts stipulated by the parties in this case was the fact that the

---

2. Justice Stanford, in his opinion, wrote:

"This case engrossed the attention of the writer of this opinion for a long time with the hope that the law would uphold the appellant herein and a revenue would be paid to the county and state, but this court's own decisions in the cases herein quoted preclude such an opinion and this court is reconciled to the judgment herein rendered as being the only course that could be followed under the circumstances." 60 Ariz. at 265, 135 P.2d at 514–15.

hospitals agreed to bear the burden of any tax assessed. This fact has no significance. The parties to a commercial transaction cannot change the essential nature of a tax imposed upon one of them by agreeing that the other shall be liable for payment of the tax. *Arizona State Tax Commission v. Garrett Corp.,* 79 Ariz. 389, 291 P.2d 208 (1955).

> "Regardless of where the burden rests, the decisive test under the class of taxing Acts now under consideration is where does the legal incidence of the tax fall." 79 Ariz. at 395, 291 P.2d at 212.

Whether the financing institutions explicitly or implicitly require the hospitals to bear the burden of the tax, or whether they choose to bear the expense themselves, the result is the same. The tax is imposed upon the *owner* of the property who in this case is not entitled to exempt status.

The trial court erred in granting summary judgment in favor of appellees. The judgment is set aside, and the cases are remanded with instructions to the trial court to enter judgment in favor of the appellant taxing authorities.

STRUCKMEYER, V. C. J., and HAYS, J., concurring.

GORDON, Justice (specially concurring):

While I am compelled to agree with the result reached in this case, I would clarify the unqualified assertion made therein at 121 Ariz. 416, 590 P.2d 1362 of the majority opinion:

> "Both parties to this action point out that there are three basic types of exemption schemes found among the various state laws. (Citation omitted.) Some states base exemption solely on ownership of the property. Others base exemption solely on use of the property. A third group combine ownership and use. *Arizona's constitutional provision is of the third type.*" (Emphasis supplied.)

This leads to the potential interpretation that both use and ownership are concomitant requirements for exemption under all of Article 9, § 2 of the Arizona Constitution. Such an interpretation is belied by the holding in *Maricopa County v. Fox Riverside Theatre Corp.,* 60 Ariz. 260, 135 P.2d 513 (1943), and by the wording of the very first sentence of Article 9, § 2, which deals with exemptions for federal, state, county and municipal property. While I am certain that the majority opinion impliedly limits its holding to the "property of" institutions listed in the second sentence of Article 9, § 2, in order that there be no misinterpretation, I would expressly so limit the holding.

CAMERON, Chief Justice:

I concur with Justice GORDON.