18 P.3d 713

CIRCLE K STORES, INC., a Texas corporation; Barnett Management, Co ., an Arizona corporation; Bashas' Inc., an Arizona corporation; Discount Tire Co., Inc., an Arizona corporation; Kentucky Fried Chicken of California, Inc., a California corporation; KFC National Management Company, a Delaware corporation; Norwest Bank Arizona, a National Association; Payless Shoesource, Inc., a Missouri corporation; Pizza Hut of America, Inc., a Delaware corporation; Safeway, Inc., a Delaware corporation; Taco Caliente, Inc., a California corporation; Texaco, Inc., a Delaware corporation; Walgreen Arizona Drug Co., an Arizona corporation, Plaintiffs–Appellants,

v.

APACHE COUNTY, Cochise County, Coconino County, Gila County, Graham County, Greenlee County, La Paz County, Maricopa County, Mohave County, Navajo County, Pima County, Pinal County, Santa Cruz County, Yavapai County, and Yuma County, political subdivisions of the State of Arizona, Defendants–Appellees.

No. 1 CA–TX 00–0002.

Court of Appeals of Arizona, Division 1, Department T.

Feb. 8, 2001.

Snell & Wilmer, L.L.P., by Janet E. Barton, Kevin J. Parker, Phoenix, Attorneys for Appellant Circle K Stores Inc.

Fennemore Craig, by Paul J. Mooney, William S. Gates, Phoenix, Attorneys for Appellant Barnett Management, Co.

Helm & Kyle, Ltd., by Roberta S. Livesay, Tempe, Attorneys for Appellees Apache County, Gila County, La Paz County, Maricopa County, Mohave County, Pima County, Pinal County, and Santa Cruz County.

Janet Napolitano, Arizona Attorney General, by Michael F. Kempner, Assistant Attorney General, Phoenix, Attorneys for Appellees Arizona Department of Revenue and all Defendant Counties other than Apache, Gila, La Paz, Maricopa, Mohave, Pima, Pinal and Santa Cruz.

## OPINION

TIMMER, Judge.

¶ 1 In 1996, Arizona voters passed Proposition 101, which added Article 9, Section 2(6) to the Arizona Constitution. That provision allows the legislature to exempt from taxation a maximum of $50,000 of the full cash value of "personal property of a taxpayer" that is used for agricultural, trade, or business purposes. At the time it referred Proposition 101 to the electorate, the legislature conditionally enacted former Arizona Revised Statutes Annotated ("A.R.S.") section 42–280 (Supp.1998), which granted the above-described exemption for "each taxpayer."

¶ 2 Appellants are corporations that operate multi-location businesses throughout Arizona. They contend that the tax court erred by ruling that former section 42–280 granted them only a single, statewide exemption in 1997 and 1998 rather than a maximum $50,000 exemption for personal property located at each of Appellants' business locations. Our resolution of this appeal turns on whether the term "taxpayer" used in Article 9, Section 2(6) of the Arizona Constitution and former A.R.S. section 42–280 refers to (a) the "business location" where personal property is used for agricultural, trade, or business purposes, or (b) the owner of such property who pays taxes. We hold that the term "taxpayer," as used in these provisions, means the owner of the described property who pays taxes, and Appellants were thus only entitled to a single, statewide exemption. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 All property in Arizona is subject to taxation by the state unless exempt under federal law or the Arizona Constitution. Ariz. Const. art. 9, § 2(12). In 1996, the Arizona Legislature referred to the electorate Proposition 101, which proposed adding Article 9, Section 2(6) to the Arizona Constitution to provide as follows:

The legislature may exempt personal property that is used for agricultural purposes or in a trade or business from taxation in a manner provided by law, except

that the exemption does not apply to any amount of the full cash value of the personal property *of a taxpayer* that exceeds fifty thousand dollars. The legislature may provide by law to increase the exempt amount according to annual variations in a designated national inflation index.

(Emphasis added.) The legislature also conditionally enacted former A.R.S. section 42–280, which stated in pertinent part:

A. Pursuant to article IX, section 2, subsection (6), Constitution of Arizona, personal property that is class 4 property used for agricultural purposes or that is class 3 property used in a trade or business is exempt from taxation up to a maximum amount of fifty thousand dollars of full cash value *for each taxpayer.*

(Emphasis added.) Former section 42–280 [1] (the "business property exemption") would only become effective if the voters approved Proposition 101. 1996 Ariz. Sess. Laws, 7th S.S., ch. 5, § 4.

¶ 4 The voters passed Proposition 101 at the general election held on November 5, 1996, and Article 9, Section 2(6) of the Arizona Constitution became effective on December 6, 1996. Section 42–280 thereafter became effective on January 1, 1997. 1996 Ariz. Sess. Laws, 7th S.S., ch. 5, §§ 4, 5.

¶ 5 The Arizona Department of Revenue ("ADOR") interpreted the term "taxpayer" in Article 9, Section 2(6) and A.R.S. section 42–280 as referring to an owner of taxable personal property, regardless of the number of separate business locations maintained by that owner. Accordingly, county assessors allowed Appellants to claim only one business property exemption for tax years 1997 and 1998, even though Appellants owned and operated businesses at multiple locations.

¶ 6 Appellants commenced this litigation to challenge Appellees' interpretation and implementation of the business property exemption for tax years 1997 and 1998. They

argued, as they do in this appeal, that the "taxpayer" referred to in Article 9, Section 2(6) of the Arizona Constitution and A.R.S. section 42–280 is the property location or "assessment account" [2] maintained by taxing authorities. They further contended that any differing definition would violate the Uniformity Clause, Article 9, Section 1 of the Arizona Constitution. On cross-motions for summary judgment, the tax court ruled that "taxpayer" means a business owner rather than an assessment account and that this interpretation does not create a conflict with the Uniformity Clause. We have jurisdiction to consider this appeal pursuant to A.R.S. section 12–2101(B) (1994).

## STANDARD OF REVIEW

¶ 7 We determine *de novo* whether any genuine issues of material fact preclude summary judgment and whether the tax court erred in applying the law. *Prince v. City of Apache Junction,* 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). Likewise, we are not bound by that court's interpretation of any statute or constitutional provision. *Blum v. State,* 171 Ariz. 201, 204, 829 P.2d 1247, 1250 (App.1992).

## DISCUSSION

**A. The meaning of "Taxpayer" under Article 9, Section 2(6) of the Arizona Constitution and A.R.S. section 42–280**

¶ 8 All parties agree that the scope of A.R.S. section 42–280 is necessarily curtailed by the authority granted to the legislature under Article 9, Section 2(6) of the Arizona Constitution. Ariz. Const. art. 9, § 2(12); *Kunes v. Samaritan Health Service,* 121 Ariz. 413, 415, 590 P.2d 1359, 1361 (1979) ("The rule of law is clear that the legislature cannot exempt from *ad valorem* taxation any property or class of property not specified in the constitution."). Consequently, we must

---

1. The legislature renumbered former A.R.S. section 42–280 as A.R.S. section 42–11127 in 1997 Ariz. Sess. Laws, ch. 150, § 172, and amended it in 1998 Ariz. Sess. Laws, ch. 1, § 190, and 4th S.S., ch. 3, § 5, both effective January 1, 1999. Unless otherwise noted, we will refer to the statute as section 42–280.

2. An "assessment account" is an administrative device that enables the assessor to apply the appropriate tax rate based on the location of the property. One business owner may have many assessment accounts if its property is located in different taxing jurisdictions within the state.

interpret the term "taxpayer" in section 42–280 so that it conforms to the grant of authority set forth in Article 9, Section 2(6).

### 1. Article 9, Section 2(6) of the Arizona Constitution

¶ 9 Our primary purpose in construing a constitutional amendment is to effectuate the intent of those who framed it and the electorate that approved it. *Jett v. City of Tucson,* 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). We first examine the plain language of the provision and, if it is clear and unambiguous, we generally subscribe to that meaning. *Id.* We may not use extrinsic evidence to vary a provision's apparent meaning. *Id.* Additionally, we strictly construe tax exemptions because they are disfavored under the law. *Kunes,* 121 Ariz. at 415, 590 P.2d at 1361.

¶ 10 Appellants argue that the term "taxpayer" in Article 9, Section 2(6) is plainly synonymous with "property location" or "assessment account" because (1) ADOR and the counties have historically treated business properties, and not their owners, as "taxpayers" and have indexed and organized their property tax databases accordingly, (2) ADOR provided fiscal impact estimates to the legislature, which were later repeated in the Voter Information Packet for Proposition 101 and attendant press releases, that predicted the effect of the proposed business property exemption on assessment accounts rather than on property owners, and (3) the legislature amended A.R.S. section 42–280 in 1998, which "clarified" that "taxpayer" means "assessment account." Appellants alternatively argue that this evidence demonstrates the ambiguity of the term "taxpayer" and that we should therefore construe the word to mean "property location" or "assessment account." As correctly noted by Appellees, however, we may not consider this extrinsic evidence to discern the meaning of "taxpayer" unless we first conclude that the term is facially ambiguous or uncertain. *Ward v. Stevens,* 86 Ariz. 222, 228, 344 P.2d 491, 495 (1959) ("[W]hen a constitutional provision is clear on its face and is logically capable of only one interpretation, no extrinsic matter may be shown in support of a construction which would vary its apparent meaning."). Thus, we initially consider whether Article 9, Section 2(6) is facially unclear or ambiguous and therefore subject to judicial construction.

¶ 11 We interpret undefined words in a constitutional provision according to their natural, obvious, and ordinary meaning as understood and used by the people. *Airport Properties v. Maricopa County,* 195 Ariz. 89, 99, ¶ 35, 985 P.2d 574, 584 (App.1999). Webster's defines "taxpayer" as "[o]ne that pays or is liable for a tax." *Webster's Ninth New Collegiate Dictionary* 1209 (1989). This definition reflects the common meaning ascribed by the populace to the word "taxpayer." *See Airport Properties,* 195 Ariz. at 99, ¶ 36, 985 P.2d at 584 ("Arizona courts have frequently resorted to recognized, authoritative dictionaries of the English language on questions of the ordinary meanings of words contained in statutory provisions."). We do not detect any language in Article 9, Section 2(6) suggesting that the referring legislature or the adopting electorate intended "taxpayer" to convey any meaning other than this common and ordinary one.

¶ 12 Appellants contend, however, that we should not apply the common definition to the term "taxpayer" because "[p]roperty taxes in Arizona are owed by the property, not the owner of the property." *Read v. Arizona Dep't of Revenue,* 166 Ariz. 533, 536, 803 P.2d 944, 947 (Tax 1991). But this legal concept does not alter the ordinary meaning of "taxpayer" as used in Article 9, Section 2(6). *Cf.* A.R.S. § 1–213 (1995) ("Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning."). Although this principle is well known in the realm of ad valorem taxation, it is not congruous with the "natural, obvious and ordinary meaning" of the word "taxpayer" "as generally understood and used by the people." *Airport Properties,* 195 Ariz. at 99, ¶ 35, 985 P.2d at 584. " 'There is no magic in statutory construction and no legal legerdemain should be used to change the meaning of simple English words.' " *St. Paul Fire & Marine Ins. Co. v. Gilmore,* 168 Ariz. 159, 164, 812 P.2d 977, 982 (1991) (quoting *Kilpa-*

*trick v. Superior Court,* 105 Ariz. 413, 421, 466 P.2d 18, 26 (1970)). We therefore decline to supplant the intent of the referring legislature and the electorate by ascribing an extraordinary definition to the word "taxpayer."

¶ 13 Additionally, although the idea that property "owes" taxes figuratively captures the essence of ad valorem taxation, the property itself is not the "taxpayer." Under our ad valorem taxing system, the property serves as the collateral on which the taxing authority realizes if taxes are not paid. *See* A.R.S. §§ 42–17153, 18101 (1999 & Supp. 2000). The actual "taxpayer," however, is the person or entity that owns or controls the property and either pays the tax or forfeits its property interest. *Cf. County of Pima v. Arizona Dep't of Revenue,* 114 Ariz. 275, 278, 560 P.2d 793, 796 (1977) (property owner is the "taxpayer" entitled to appeal valuation or classification of "his" property to superior court under A.R.S. section 42–146); *Maricopa County v. Superior Court,* 170 Ariz. 248, 253, 823 P.2d 696, 701 (App.1991) (holder of first deed-of-trust on which owner is in default is not legal or beneficial owner of property and therefore does not qualify as "taxpayer" entitled to commence ad valorem tax appeal in superior court). Property and business locations do not write checks and pay taxes; people and organizations do. We are thus further persuaded that the referring legislature and the electorate intended such persons and organizations to be the "taxpayers" entitled to utilize the business property exemption.

¶ 14 The context in which "taxpayer" is used in Article 9, Section 2(6) further bolsters our conclusion that neither the referring legislature nor the electorate intended "taxpayer" to mean "business location" or "assessment account." The provision authorizes a fifty-thousand-dollar maximum exemption for "the personal property *of a taxpayer.*" Ariz. Const. art. 9, § 2(6) (emphasis added). The emphasized language contemplates that the taxpayer *owns* the property. *Cf. Kunes,* 121 Ariz. at 416, 590 P.2d at 1362 (holding that the language " 'property of . . . charitable . . . institutions' " in Article 9, Section 2(2) of the Arizona Constitution "clearly and unambiguously means property *owned* by such institutions"). Neither a business location nor an assessment account can own personal property because ownership is a privilege uniquely reserved to people and entities. For this additional reason we decline to interpret "taxpayer" as meaning a "business location" or "assessment account."

¶ 15 Appellants finally argue that we should refrain from deciding that "taxpayer" refers to a property owner because this interpretation would lead to a "nonsensical" result that could not have been intended by the legislature or the electorate. *See In re Cameron T.,* 190 Ariz. 456, 460, 949 P.2d 545, 549 (App.1997) ("[I]f the language of a constitutional provision yields a result so irrational that it cannot have been intended by persons of ordinary intelligence and discretion," we modify the words to conform to the framers' apparent intent.). Specifically, Appellants contend that unless "taxpayer" means "business location" or "assessment account," a multi-location business could obtain numerous business property exemptions by separately incorporating each of its business locations, while other such businesses that did not do so would continue to receive only a single, statewide exemption for all their personal property. We do not consider this result "so irrational" that neither the legislature nor the electorate could have intended "taxpayer" to refer to a property owner. Structuring business entities to take optimum advantage of tax benefits is time-honored and legal. Nothing about this practice requires us to ascribe a unique and expansive definition to the term "taxpayer." This conclusion is particularly warranted in light of our mandate to strictly construe tax exemptions. *Kunes,* 121 Ariz. at 415, 590 P.2d at 1361.

¶ 16 For the foregoing reasons, we hold that the term "taxpayer" in Article 9, Section 2(6) of the Arizona Constitution plainly refers to a person or entity that owns personal property used for agricultural, trade, or business purposes and who pays tax on such property. Because this provision is clear and unambiguous, we do not address Appellants' arguments that extrinsic evidence reveals a

different meaning for the term "taxpayer." *Jett,* 180 Ariz. at 119, 882 P.2d at 430.

¶ 17 By approving Proposition 101 and amending the constitution, Arizona voters authorized the legislature to exempt from ad valorem taxation specified classes of an owner's personal property that is used for agricultural, trade, or business purposes and does not exceed fifty-thousand dollars in full cash value. Having delineated the scope of authority granted to the legislature by the constitution, we now address the meaning of "taxpayer" as used in A.R.S. section 42–280.

### 2. A.R.S. section 42–280

■■■■■ ¶ 18 The legislature did not define the term "taxpayer" in A.R.S. section 42–280. Because "taxpayer" is defined in seven other provisions within Title 42, A.R.S., and is given a general definition in Title 43, A.R.S., governing income tax, some appellants argue that the lack of a specific definition for "taxpayer" in section 42–280 renders the term ambiguous. We disagree. By declining to define a statutory term, the legislature generally intends to give the ordinary meaning to the word. *Kessen v. Stewart,* 195 Ariz. 488, 491, ¶ 6, 990 P.2d 689, 692 (App.1999) ("[W]e will give terms 'their ordinary meanings, unless the legislature has provided a specific definition or the context of the statute indicates a term carries a special meaning.' ") (quoting *Wells Fargo Credit Corp. v. Tolliver,* 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App.1995)). Although the legislature specifically varied the ordinary meaning of "taxpayer" in other unrelated provisions within Title 42, it did not do so in section 42–280. ·This omission did not create an ambiguity within section 42–280.

¶ 19 Section 42–280 was conditionally enacted pursuant to Article 9, Section 2(6) of the Arizona Constitution, and the statutory language closely tracks that constitutional provision. Thus, for the reasons set forth in our discussion of the meaning of "taxpayer" in Article 9, Section 2(6), we conclude that "taxpayer," as used in section 42–280, clearly and unambiguously refers to an owner of personal property used for agricultural, trade, or business purposes and who pays tax on such property. This definition conforms with the grant of authority set forth in Article 9, Section 2(6). If section 42–280 is interpreted as giving additional business property exemptions to owners who operate multi-location businesses, rather than limiting the owner to one such exemption, the statute would exceed the authority granted by Article 9, Section 2(6) and would be rendered unconstitutional. For this additional reason, we decline to vary the plain meaning of "taxpayer" as used in section 42–280. *See Hayes v. Cont'l Ins. Co.,* 178 Ariz. 264, 272, 872 P.2d 668, 676 (1994) ("First, if possible this court construes statutes to avoid rendering them unconstitutional.").

■■■■■ ¶ 20 Appellants argue, however, that the legislature has "clarified" the meaning of "taxpayer" in both Article 9, Section 2(6) of the Arizona Constitution and section 42–280, and we should apply that definition retroactively. We reject this contention.

¶ 21 In 1998, the legislature amended section 42–280, then renumbered as section 42–11127, by providing that specified classes of personal property used for agricultural, trade, or business purposes are "exempt from taxation up to a maximum amount of fifty-thousand dollars of full cash value of *each assessment account.*" A.R.S. § 42–11127(A) (Supp.1999) (emphasis added). The legislature further provided that "[f]or purposes of this section and article IX section 2, subsection (6), constitution of Arizona, an assessment account is considered to be a taxpayer." A.R.S. § 42–11127(D). Appellants contend that section 42–11127 "clarified" the meaning of "taxpayer" in former section 42–280 and Article 9, Section 2(6) to mean "assessment account" and we must ascribe that meaning to the term. *See City of Mesa v. Killingsworth,* 96 Ariz. 290, 297, 394 P.2d 410, 414 (1964) ("An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act."). Appellees respond that section 42–11127 substantively changed former section 42–280, and because the legislature did not expressly apply the statute retroactively, we should not do so. *See* A.R.S. § 1–244 (1995) ("No statute is retroactive unless expressly declared therein."); *State v. Gonzales,* 141 Ariz. 512, 513,

687 P.2d 1267, 1268 (1984) ("Unless a statute provides otherwise, 'it will not govern events that occurred before its effective date.'") (quoting *State v. Coconino County Superior Court*, 139 Ariz. 422, 427, 678 P.2d 1386, 1391 (1984)).

¶ 22 We need not determine whether section 42–11127 "clarified" or "changed" the meaning of "taxpayer" in section 42–280 because a legislative amendment may only "clarify" an ambiguous statute. *Weekly v. City of Mesa*, 181 Ariz. 159, 163, 888 P.2d 1346, 1350 (App.1994). In light of our conclusion that former section 42–280 is facially clear and unambiguous, we cannot use section 42–11127 to vary its plain meaning. *Id.*

¶ 23 Additionally, "clarifying" the term "taxpayer" in former section 42–280 to mean "assessment account" would render that provision unconstitutional because the legislature was not authorized by Article 9, Section 2(6) to enact such legislation.[3] See discussion *supra*, ¶¶ 9–17. *Conrad v. Maricopa County*, 40 Ariz. 390, 393, 12 P.2d 613, 614 (1932) ("[T]he Legislature cannot grant more, but may give much less than the exemption permitted by the Constitution."). The legislature was likewise not empowered to expand the authority granted it by Article 9, Section 2(6) by belatedly defining the term "taxpayer" in that provision to vary its plain and unambiguous meaning. The legislature may only change the scope of Article 9, Section 2(6) by referring a proposed amendment to the electorate for approval. Ariz. Const. art. 21, § 1. It did not do so. For this additional reason, we decline to vary the plain meaning of former section 42–280 by retroactively applying section 42–11127.

## B. Effect of the Uniformity Clause

¶ 24 Appellants next argue that we must adopt their interpretation of Article 9,

Section 2(6) of the Arizona Constitution and A.R.S. section 42–280 to avoid violating the Uniformity Clause of the Arizona Constitution, Article 9, Section 1.[4] In a related argument, Appellants contend that Appellees violated the Uniformity Clause by their application of section 42–280. As primary support for each contention, Appellants rely on our supreme court's opinion in *America West Airlines v. Department of Revenue*, 179 Ariz. 528, 535, 880 P.2d 1074, 1081 (1994), which held that "similar property used in the same industry for the same purpose cannot be classified differently for ad valorem taxation simply because of the size, wealth, or location of its owner." Appellants vigorously argue that Appellees' interpretation of Article 9, Section 2(6) and section 42–280 violates the Uniformity Clause because competitors in the same industry using the same property to provide the same services are taxed differently based solely on the form of their corporate structure.[5] Appellees counter that the business property exemption does not violate the Uniformity Clause because the taxing authorities uniformly tax all property within the specified class without making distinctions based upon location, time, or any other non-property criteria.

¶ 25 But we need not decide whether the business property exemption impermissibly differentiates among taxable personal property within the same class. Even if Appellants are correct that the business property exemption allows the taxing authorities to differently tax property within the same class in violation of the Uniformity Clause, we must reject their position because, unlike the case in *America West*, such treatment is constitutionally authorized by another provision—Article 9, Section 2(6).

---

3. We do not address the constitutionality of A.R.S. section 42–11127 because that issue is not before us.

4. "[A]ll taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax...."

5. Appellants offered a hypothetical that best illustrates the argument:
   [I]f all Wendy's restaurants in Arizona were owned by Wendy's Corp., only one of the Wen-

dy's restaurants would be entitled to the $50,000 exemption, while if the McDonald's restaurants in Arizona were incorporated as McDonald's Restaurant # 1, Inc., McDonald's Restaurant # 2, Inc., and so on, each McDonald's restaurant would be entitled to a $50,000 exemption. As such, the McDonald's restaurant with nearly identical personal property as the Wendy's restaurant across the street would receive dissimilar tax treatment.

¶ 26 Assuming that Proposition 101 amended Article 9, Section 2 so that it conflicts with the Uniformity Clause, we must harmonize the provisions to make the constitution "a consistent workable whole." *State ex rel. Nelson v. Jordan*, 104 Ariz. 193, 196, 450 P.2d 383, 386 (1969). Appellants argue that the only way to harmonize these provisions is to interpret Article 9, Section 2(6) as authorizing the legislature to exempt the first fifty thousand dollars of personal property for each assessment account or business location. We disagree.

¶ 27 The merit of Appellants' argument depends entirely upon their theory that a constitutional amendment affects only explicitly amended provisions. Appellant Circle K cites *Ward v. Stevens*, 86 Ariz. 222, 344 P.2d 491, in support of this contention, but its reliance is misplaced. The court in *Ward* merely noted that the amendment under review did not expressly amend other, apparently conflicting constitutional provisions. 86 Ariz. at 228, 344 P.2d at 495. After concluding that the constitutional language at issue was ambiguous, and an urged construction would result in an absurd situation, the court interpreted the provision by discerning its meaning from extrinsic evidence. *Id.* at 228–29, 344 P.2d at 495–96. Significantly, the court did not state or imply that a constitutional amendment impacts other provisions only if explicitly amended.

¶ 28 Our supreme court recently noted that " '[i]t is an established axiom of constitutional law that where there are both general and specific constitutional provisions relating to the same subject, the specific provision will control.' " *Clouse v. Ariz. Dep't of Pub. Safety*, 199 Ariz. 196, ¶ 11, 16 P.3d 757, 760 (2001) (quoting *de'Sha v. Reed*, 194 Colo. 367, 572 P.2d 821, 823 (1977)). Assuming that Article 9, Section 2(6) authorized the legislature to differently tax personal property within the same, distinct class, we conclude that the legislature and the electorate intended this provision to control. Stated another way, Article 9, Section 2(6) carves out an exception to the Uniformity Clause by allowing the legislature to annually exempt the first fifty-thousand dollars of full cash value of each owner's personal prop-

erty used for agricultural, trade, or business purposes.

¶ 29 Our interpretation of Article 9, Section 2(6) harmonizes this provision with the Uniformity Clause in a way that renders the constitution "a consistent workable whole." *Nelson*, 104 Ariz. at 196, 450 P.2d at 386. It recognizes the ongoing viability of the Uniformity Clause but acknowledges the ability of the legislature and the electorate, working together, to create exceptions to that provision. *See Airport Properties*, 195 Ariz. at 101, ¶ 42, 985 P.2d at 586 ("For tax purposes, then, an 'exemption' implies a discrete exception to the general rule of taxation, carved out of a category or categories that would otherwise be subject to uniform taxation.").

¶ 30 Indeed, other provisions within Article 9, Section 2 authorize the legislature to exempt from taxation property owned by certain veterans, widows, widowers, and disabled persons, up to a fixed-dollar cap. Ariz. Const. art. 9, §§ 2(7)–(10), 2.1 and 2.2. Application of these exemptions results in an effective tax rate for eligible taxpayers that differs from the rate applicable to an ineligible taxpayer who owns the same kind of property. Use of these exemptions likewise yields an effective tax rate that varies depending on the total value of otherwise taxable property owned by eligible taxpayers. *Id.* Like Article 9, Section 2(6), none of these provisions explicitly "amends" the Uniformity Clause, but co-exists with it.

¶ 31 We hold that by amending the constitution to add Article 9, Section 2(6), the legislature and the Arizona electorate intended to authorize the legislature to annually exempt the first fifty-thousand dollars of full cash value of an owner's personal property used for agricultural, trade, or business purposes. To the extent this provision conflicts with the Uniformity Clause, we further hold that the specific authority granted by Article 9, Section 2(6) controls. Consequently, we need not consider whether Article 9, Section 2(6) or A.R.S. section 42–280 "violates" the Uniformity Clause under the analysis adopted in *America West Airlines*. Finally, because Appellees taxed property pursuant to A .R.S. section 42–280 in a manner consistent with the authority granted by Article 9,

Section 2(6) of the Arizona Constitution, the tax court did not err by granting summary judgment in favor of Appellees.

## CONCLUSION

¶ 32 For the foregoing reasons, we affirm.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, SUSAN A. EHRLICH, Judge.

