56 P.3d 70

**MARICOPA COUNTY, Pima County, Pinal County, Apache County, Gila County, La Paz County, Mohave County And Santa Cruz County, bodies politic, Plaintiffs–Appellees,**

v.

**KINKO'S INC., a Delaware corporation, Kinko's Inc., # 538; Kinko's Inc., # 544; Kinko's Inc., # 628; Kinko's Inc., # 1081; Kinko's Inc., # 2305; Kinko's Inc., # 2303; Kinko's Inc., # 2301; Kinko's Inc., # 2310; Kinko's Inc., # 2311; Kinko's Inc., # 2312; Kinko's Inc., # 2314; Kinko's Inc., 2313; Kinko's Inc., # 2309; Kinko's Inc., # 2306; Kinko's Inc., # 6711, Defendants–Appellants.**

**Maricopa County, Pima County, Pinal County, Apache County, Gila County, La Paz County, Mohave County, And Santa Cruz County, bodies politic, Plaintiffs–Appellees,**

v.

**Garcia's, Garcia's Mexican dba Garcia's Mexican Restaurant, Garcia's Bank One dba Garcia's Bank One Ballpark and Eateries, Inc., Defendants–Appellants.**

**Maricopa County, Pima County, Pinal County, Apache County, Gila County, La Paz County, Mohave County And Santa Cruz County, bodies politic, Plaintiffs–Appellees,**

**Harkins Amusement Enterprises, Inc., a/k/a/ Harkins Amusements; Harkins Bell Towne Centre; Harkins Theatres, Inc., a/k/a/ Harkins Theatres; Poca Fiesta Theatre; Harkins Paradise Cinemas, L.L.C. a/k/a Harkins Paradise Cinemas; Harkins Inc. # 6; Harkins CT Theatres; Bell Tower # 8; Cornerstone Theatre # 17; Fiesta 5 Theatre and Harkins Arcadia # 8, collectively, Defendants–Appellants.**

No. 1 CA–TX 01–0010.

Court of Appeals of Arizona, Division 1, Department T.

Oct. 24, 2002.

Helm & Kyle, Ltd. By Roberta S. Livesay, Tempe, Special Counsel for Plaintiffs–Appellees.

Fennemore Craig, P.C. By Paul J. Mooney, Jim L. Wright, Phoenix, Attorneys for Defendants–Appellants Kinko's Inc.

Donald P. Roelke, Phoenix, Attorney for Defendants–Appellants Garcia's.

David N. Farren, Phoenix, Attorney for Defendants–Appellants Harkins.

## OPINION

GEMMILL, Judge.

¶ 1 Appellants are companies that own personal property and do business in Arizona at multiple locations. The tax court entered summary judgment against the appellants and in favor of eight plaintiff counties based on the conclusion that the Arizona Constitu-

tion allows the legislature to exempt from taxation a maximum of $50,000 per year of personal property of a taxpayer used for agricultural, trade, or business purposes, regardless of the number of locations owned by each taxpayer. In this appeal, appellants contend that Arizona law should be interpreted to allow a $50,000 annual exemption for property at each location. On the basis of Article 9, Section 2(6) of the Arizona Constitution, we affirm the judgment of the tax court.

¶ 2 Article 9, Section 2(6) of the Arizona Constitution was adopted and approved by Arizona voters in 1996, having been referred to the voters by the legislature. This constitutional provision states:

> The legislature may exempt personal property that is used for agricultural purposes or in a trade or business from taxation in a manner provided by law, except that the exemption does not apply to any amount of the full cash value of the personal property of a taxpayer that exceeds fifty thousand dollars. The legislature may provide by law to increase the exempt amount according to annual variations in a designated national inflation index.

Ariz. Const. art. 9, § 2(6). We recently interpreted this constitutional provision in *Circle K Stores, Inc. v. Apache County*, 199 Ariz. 402, 18 P.3d 713 (App.2001), holding that the word "taxpayer" as used in Article 9, Section 2(6) of the Constitution and in former Arizona Revised Statutes ("A.R.S.") section 42–280 (repealed 1999) meant the owner of the property who pays taxes, thereby limiting the taxpayers in that case to a single, statewide exemption. *Id.* at 404, ¶ 2, 18 P.3d at 715. *Circle K* involved tax years 1997 and 1998 and former § 42–280, while this dispute addresses tax year 1999 and A.R.S. section 42–11127 (1999), the successor to § 42–280.

¶ 3 The tax court in this case ruled consistently with *Circle K.* Appellants assert that the tax court erred by construing § 42–11127, which expressly grants an exemption up to $50,000 to "each assessment account," as applicable to each property owner only once for all such property in the state. We conclude that our analysis in *Circle K* re-

solves appellants' major contentions in this appeal.

## ANALYSIS

 ¶ 4 On appeal from summary judgment when the material facts are not in dispute, we review whether the tax court correctly applied the law and whether appellants were entitled to summary judgment as a matter of law. *Krausz ex rel. KGC Trust I v. Maricopa County*, 200 Ariz. 479, 480, ¶ 4, 28 P.3d 335, 336 (App.2001). We independently review the tax court's interpretation of an Arizona statute or constitutional provision. *Id.*

### *Circle K,* § 42–280, and § 42–11127

¶ 5 *Circle K* concerned former § 42–280 (repealed 1999), the immediate predecessor of § 42–11127. Section 42–280, which became law after the electorate adopted Article 9, Section 2(6) of the Arizona Constitution in 1996, provided in part:

> Pursuant to article IX, § 2, subsection (6), Constitution of Arizona, personal property that is class four property used for agricultural purposes or that is class three property used in a trade or business is exempt from taxation up to a maximum amount of fifty thousand dollars of full cash value *for each taxpayer.*

A.R.S. § 42–280(A) (1997) (emphasis added). The taxpayers in *Circle K* contended that the term "taxpayer" in Article 9, Section 2(6) and § 42–280 should be construed to mean each "property location" or "assessment account" maintained by the taxing authorities. 199 Ariz. at 406, ¶ 10, 18 P.3d at 717. This interpretation would have granted each owner of business or agricultural property in use at multiple locations in Arizona a separate exemption up to $50,000 for each such location. *Id.* at 404, 406, ¶¶ 2, 10, 18 P.3d at 715, 717. The *Circle K* court rejected this proposed interpretation, applying the plain meaning of "taxpayer" instead. *Id.* at 409, ¶ 22, 18 P.3d at 720.

¶ 6 In 1997, the legislature renumbered § 42–280 as § 42–11127, to be effective January 1, 1999. 1997 Ariz. Sess. Laws, ch. 150, § 172. Before § 42–11127 took effect, the

legislature in 1998 amended subsection (A) to substitute the term "assessment account" in place of the term "taxpayer." 1998 Ariz. Sess. Laws 4th S.S., ch. 3, § 5; § 42–11127(A) (1999). The legislature also enacted a new subsection (D), which provides: "For purposes of this section and article IX, § 2, subsection (6), Constitution of Arizona, an assessment account is considered to be a taxpayer." 1998 Ariz. Sess. Laws 4th S.S., ch. 3, § 5; § 42–11127(D) (1999). Section 42–11127, with its 1998 amendments, became effective on January 1, 1999. *Circle K,* 199 Ariz. at 405, n. 1, ¶ 3, 18 P.3d at 716, n. 1 (recounting legislative history).

¶ 7 Appellants argue that the adoption of § 42–11127 proves that their original position rejected in *Circle K* is now correct. For the following reasons, we believe that *Circle K* continues to be persuasive. We therefore reject appellants' arguments and apply the reasoning of our decision in *Circle K.*

### *Circle K's* Continuing Logic

¶ 8 In support of their proposed interpretation, the *Circle K* taxpayers urged essentially the same arguments that appellants now advance for their analogous contention that § 42–11127(A) may constitutionally apply as written. 199 Ariz. at 406–07, ¶¶ 10–15, 18 P.3d at 717–18. After considering these arguments, the *Circle K* court held:

> [T]he term "taxpayer" in Article 9, Section 2(6) of the Arizona Constitution plainly refers to a person or entity that owns personal property used for agricultural, trade, or business purposes and who pays tax on such property. Because this provision is clear and unambiguous, we do not address Appellants' arguments that extrinsic evidence reveals a different meaning for the term "taxpayer."

*Id.* at 407–408, ¶ 16, 18 P.3d at 718–19 (citing *Jett v. City of Tucson,* 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994)). The *Circle K* court concluded that by amending the constitution, Arizona voters:

> authorized the legislature to exempt from ad valorem taxation specified classes of an owner's personal property that is used for agricultural, trade, or business purposes

and does not exceed fifty-thousand dollars in full cash value.

*Id.* at 408, ¶ 17, 18 P.3d at 719.

¶ 9 In *Circle K,* we interpreted the term "taxpayer" in former § 42–208 the same way. We explained:

> This definition conforms with the grant of authority set forth in Article 9, Section 2(6). If section 42–280 is interpreted as giving additional business property exemptions to owners who operate multi-location businesses, rather than limiting the owner to one such exemption, the statute would exceed the authority granted by Article 9, Section 2(6) and *would be rendered unconstitutional.*

*Id.* at 408, ¶ 19, 18 P.3d at 719 (emphasis added). Similarly, in rejecting the taxpayers' contention that the adoption of § 42–11127 retroactively "clarified" the meaning of former § 42–208, the *Circle K* court explained that:

> "[C]larifying" the term "taxpayer" in former section 42–280 to mean "assessment account" *would render that provision unconstitutional* because the legislature was not authorized by Article 9, Section 2(6) to enact such legislation . . . . The legislature was likewise not empowered to expand the authority granted it by Article 9, Section 2(6) by belatedly defining the term "taxpayer" in that provision to vary its plain and unambiguous meaning. The legislature may only change the scope of Article 9, Section 2(6) by referring a proposed amendment to the electorate for approval. Ariz. Const. art. 21, § 1. It did not do so.

*Id.* at 409, ¶ 23, 18 P.3d at 720 (citations omitted) (emphasis added).

### Section 42–11127 is Unconstitutional

■ ¶ 10 The *Circle K,* analysis applies straightforwardly to appellants' contentions here. Article 9, Section 2(6) of the Arizona Constitution authorizes the legislature to adopt legislation granting only a single exemption up to $50,000 of full cash value of agricultural, trade, or business personalty for each owner of such property, regardless of the number of locations at which the owner's property is used. As written, § 42–11127 cannot be applied consistently with Article 9,

**500**

Section 2(6), because the statute would grant multiple-location owners an exemption up to $50,000 for each separate location.

¶ 11 When considering the constitutionality of a statute, we begin with a strong presumption that legislative enactments are constitutional. *Martin v. Reinstein,* 195 Ariz. 293, 301–02, ¶ 16, 987 P.2d 779, 787–88 (App.1999). We have a duty to interpret statutes in harmony with the constitution if it is possible to reasonably do so. *Id.* The primary goal in interpreting statutes is to ascertain and give effect to the intent of the legislature. *Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, 529, ¶ 8, 19 P.3d 1241, 1245 (App.2001). The problem here is that the apparent legislative intent behind § 42–11127 was to expand the availability of the $50,000 tax exemption. *See Circle K,* 199 Ariz. at 408–09, ¶¶ 19–23, 18 P.3d at 719–20. We are unable to construe the language of § 42–11127 to be constitutional in light of the plain language of Article 9, Section 2(6) of the Arizona Constitution. *Id.* Nor are we able to rewrite the statute. *First National Bank of Arizona v. Superior Court,* 112 Ariz. 292, 295, 541 P.2d 392, 395 (1975) (rewriting an unconstitutional statute is a legislative function, not a judicial function). Therefore, § 42–11127 is unconstitutional.

¶ 12 Appellants nevertheless rely on *Calik v. Kongable,* 195 Ariz. 496, 990 P.2d 1055 (1999), for the proposition that, by adopting § 42–11127, the legislature legitimately and effectively clarified its original intent underlying former § 42–280. We do not agree. Appellants ignore the fact that the adoption of § 42–11127 was an attempt to "clarify" not only former § 42–280 but also Article 9, Section 2(6) of the Arizona Constitution. In contrast, *Calik* concerned the electorate's swift rejection of a legislative change in a provision that the electorate itself had only recently adopted. *Id.* at 501, ¶ 21, 990 P.2d at 1060. Our supreme court determined that, under those circumstances, the electorate's action constituted an effective retroactive clarification of its original intent. *Id.*

¶ 13 By adopting § 42–11127, however, the legislature attempted to broaden the scope of an amendment to the Arizona Constitution that the electorate originally approved and brought into effect. That the electorate may clarify through swift action the original intent of its own initiative provision, as in *Calik,* does not imply that the legislature may modify an unambiguous constitutional provision that the electorate, as Arizona's ultimate sovereign, has approved. As we held in *Circle K,* "[t]he legislature may only change the scope of Article 9, Section 2(6) by referring a proposed amendment to the electorate for approval." 199 Ariz. at 409, ¶ 23, 18 P.3d at 720 (citing Ariz. Const., art. 21, § 1).

¶ 14 Contrary to appellants' contention, *Circle K* is not meaningfully distinguishable from this case on the ground that a different statute is involved. Although numbered differently, § 42–11127 is virtually the same as former § 42–280, with this critical exception: § 42–11127 expressly adopts a definition of "taxpayer" that *Circle K* squarely determined would render § 42–280 unconstitutional under Article 9, Section 2(6) of the Arizona Constitution. 199 Ariz. at 409, ¶ 23, 18 P.3d at 720. The *Circle K* court persuasively analyzed the same issues presented herein, and the tax court correctly applied similar reasoning to decide against appellants' position.

¶ 15 Thus, we reaffirm and follow *Circle K* in this case. We therefore hold that, as written, § 42–11127 impermissibly multiplies and expands the personal property tax exemptions authorized by Article 9, Section 2(6) of the Arizona Constitution. *See* Ariz. Const. art. 9, § 2(13) ("All property in the state not exempt under the laws of the United States or under this constitution or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law.").

### Revival of § 42–280

¶ 16 Because we hold that § 42–11127 violates the Arizona constitution, we must clarify the governing law for this situation. "[W]hen a law that repeals a former law is found to be unconstitutional, and therefore void, the operative repeal of the former constitutional law also falls, with the effect that the prior version of the amending

statute is automatically reinstated by operation of law . . . ." *Tucson Elec. Power Co. v. Apache County,* 185 Ariz. 5, 23, 912 P.2d 9, 27 (App.1995) (citing *Selective Life Ins. Co. v. Equitable Life Assurance Soc'y,* 101 Ariz. 594, 601, 422 P.2d 710, 718 (1967)).

¶ 17 In order to apply the automatic revival doctrine, this case must meet four requirements, starting with these two:

> First, the evident purpose of the unconstitutional amendment must be to displace the old law and substitute for it. When the legislature provides two enactments in all respects identical except for the amending language found invalid, this is a good indication that substitution was the intent. Second, it must appear that the legislature would not have passed the amendment if its invalidity would have left a "hiatus in the law" by repeal of the former statute.

185 Ariz. at 23, 912 P.2d at 27 (citations omitted). Here, § 42–280 was renumbered as § 42–11127 and two substantive changes were made: (1) in subsection (A), the word "taxpayer" was replaced with the phrase "assessment account"; and (2) subsection (D) was added, specifically referring to the constitutional amendment and purporting to define "assessment account" as "taxpayer." *See* ¶ 6, *supra.* These actions demonstrate a clear legislative intent to replace § 42–280 with § 42–11127. We also believe that the legislature would not have intentionally passed an invalid amendment of § 42–280, thereby depriving taxpayers of a constitutionally authorized exemption.

¶ 18 Having found that the enactment of § 42–11127 satisfied the first two requirements from *Tucson Electric,* we next consider the final criteria:

> The other criteria for application of this general rule of automatic revival are that the former version of the statute must be the immediate predecessor of the unconstitutional statute that was simultaneously repealed with enactment of the invalid statute, and the former statute must be constitutional.

185 Ariz. at 25, 912 P.2d at 29. Although the renumbering of § 42–280 and the "assessment account" amendments occurred separately, *see* ¶ 6, *supra,* § 42–11127 became effective on January 1, 1999, simultaneously with the repeal of § 42–280. This sufficiently satisfies the third requirement. Finally, *Circle K* upheld the constitutionality of § 42–280. 199 Ariz. at 409, ¶ 23, 18 P.3d at 720. Therefore, under the automatic revival doctrine enunciated in *Tucson Electric,* § 42–280 is revived to fill the gap in our tax code caused by § 42–11127's unconstitutionality.

### The Tax Court Properly Denied the Relief Requested by Kinko's Pursuant to Rule 56(f)

■ ¶ 19 The Kinko's appellants ("Kinko's") also present a separate matter: the denial of their motion for additional discovery pursuant to Rule 56(f), Arizona Rules of Civil Procedure. The tax court determined that the discovery sought by Kinko's was unnecessary to decide the parties' cross-motions for summary judgment. We apply an abuse of discretion standard of review to a denial of relief under Rule 56(f). *Lewis v. Oliver,* 178 Ariz. 330, 338, 873 P.2d 668, 676 (App.1993). We conclude that the tax court did not abuse its discretion by denying this relief.

¶ 20 Kinko's sought to conduct discovery to "quantify precisely" the number of Arizona counties that were applying § 42–11127 in accordance with appellants' position in this litigation. Such discovery, Kinko's believed, would support the thesis that the interpretation of § 42–11127 urged by the counties in this action would violate Article 9, Section 1 ("the Uniformity Clause") of the Arizona Constitution.

¶ 21 The taxpayers in *Circle K* advanced a similar thesis, contending that the literal application of former § 42–280 would violate the Uniformity Clause. 199 Ariz. at 409, ¶ 24, 18 P.3d at 720. We discussed and rejected that contention in *Circle K. Id.* at 409–411, ¶¶ 24–31, 18 P.3d at 720–22. We do so again here. The tax court correctly determined that under Article 9, Section 2(6) of our constitution, the discovery that Kinko's proposed to conduct would not produce any relevant evidence.

### CONCLUSION

¶ 22 Article 9, Section 2(6) of the Arizona Constitution limits the power of the legisla-

ture to extend to each taxpayer more than one annual tax exemption up to $50,000 of agricultural, trade, or business property, regardless of the number of locations at which the taxpayer puts such property to use. Section 42–11127 is unconstitutional because it purports to grant exemptions to each "assessment account" or location, thereby allowing multiple exemptions to taxpayers who own multiple locations. We declare A.R.S. § 42–280 to be automatically revived to take the place of § 42–11127. The tax court did not abuse its discretion by denying Kinko's additional time to conduct discovery pertaining to their Uniformity Clause argument. For these reasons, we affirm the judgment of the tax court. Finally, because appellants have not prevailed, we deny their request for attorneys' fees pursuant to A.R.S. § 12–348(B) (Supp.2001).

CONCURRING: JEFFERSON L. LANKFORD and JAMES B. SULT, Judges.